Eastern District of Kentucky
FILED
JUN 20 2006
AT LONDON
LESLIE G. WHITMER
CLERK U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
LONDON

CIVIL ACTION NO. 05-441-GWU

JACKIE M. MINIARD, PLAINTIFF,

VS. **MEMORANDUM OPINION**

JO ANNE B. BARNHART,
COMMISSIONER OF SOCIAL SECURITY, DEFENDANT.

## INTRODUCTION

The plaintiff brought this action to obtain judicial review of an administrative denial of her application for Supplemental Security Income (SSI). The appeal is currently before the Court on cross-motions for summary judgment.

## APPLICABLE LAW

Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence. Jones v. Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991); Crouch v. Secretary of Health and Human Services, 909 F.2d 852, 855 (6th Cir. 1990). This "substantial evidence" is "such evidence as a reasonable mind shall accept as adequate to support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. Crouch, 909 F.2d at 855.

1

Miniard

The regulations outline a five-step analysis for evaluating disability claims. See 20 C.F.R. Section 404.1520.

Step four refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987). The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983). However, both 20 C.F.R. 416.965(a) and 20 C.F.R. 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all. Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case. Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had. E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994). One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

2

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities. 20 C.F.R. 404.1567(b). "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing. 20 C.F.R. 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990). If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid. Ibid. In

such cases, the agency may be required to consult a vocational specialist. <u>Damron v. Secretary</u>, 778 F.2d 279, 282 (6th Cir. 1985). Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's physical and mental impairments. <u>Varley v. Secretary of Health and Human Services</u>, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The plaintiff, Jackie M. Miniard, was found by an Administrative Law Judge (ALJ) to have "severe" impairments consisting of anxiety and an obsessive compulsive disorder. (Tr. 19). Nevertheless, based in part on the testimony of a vocational expert (VE), the ALJ determined that the plaintiff retained the residual functional capacity to perform a significant number of jobs existing in the economy and, therefore, was not entitled to benefits. (Tr. 20-2). The Appeals Council declined to review, and this action followed.

At the administrative hearing, the ALJ had asked the VE whether a person of the plaintiff's age, education, and work experience could perform any jobs if she had no physical limitations, and was mentally limited to no more than an ability to perform simple, repetitive tasks in jobs where no public or co-worker interaction was required. (Tr. 346). The VE responded that there were jobs that such a person could perform, and proceeded to give the numbers in which they existed in the state

4

and national economies. (Tr. 346-7). On the other hand, the VE testified that if the plaintiff's testimony were found to be credible and supported by the record, there would be no jobs that she could perform. (Tr. 347-8).

On appeal, this Court must determine whether the hypothetical factors selected by the ALJ are supported by substantial evidence. The plaintiff's SSI application was filed August 26, 2003 (Tr. 46-8), meaning that she would not be eligible for benefits prior to this date.

The plaintiff alleged disability due only to mental factors, including panic attacks and dislike of crowds. (Tr. 55). At the administrative hearing, she additionally described an obsessive fear of germs and need to be constantly cleaning her house as well as checking the same things over and over. (Tr. 325-35). The plaintiff testified that she had been bulimic her entire life "off and on," but had never been hospitalized for any of her mental conditions. (Tr. 338, 344).

Medical evidence related to the plaintiff's psychological problems includes report from Dr. A. Dahhan dated November 27, 2004, which indicated that he had seen the plaintiff between 1991 and December, 2003 and treated her for depression with the use of medications Wellbutrin and Vistaril. (Tr. 122). He opined that she would have no restrictions on her daily activities, her ability to maintain social functioning, or her concentration, persistence, and pace, and no episodes of deterioration or decompensation in work or work like settings. (Tr. 123).

Miniard

The plaintiff's prior treating family physician, Dr. A. Ahmad, submitted records showing treatment for obsessive compulsive disorder and palpitations in 1998, well before the date the plaintiff would be eligible for benefits in August, 2003. (E.g., Tr. 182-7). However, no functional restrictions are suggested. The plaintiff's current family physician, Dr. Jose Echeverria, diagnosed anxiety and obsessive compulsive disorder and encourage the plaintiff to see a psychiatrist. (Tr. 170). Again, no functional restrictions are given.

The plaintiff began treatment at her local Comprehensive Care Center (CCC) in approximately April, 2004, indicating that she could not take her mind off checking and cleaning, felt overwhelmed, and had been vomiting her meals up. (Tr. 298-9). The staff psychiatrist, Dr. S. Raza, diagnosed obsessive compulsive disorder and bulimia nervosa, and assigned a Global Assessment of Functioning (GAF) score of 55. (Tr. 299). A GAF score in this range reflects "moderate" symptoms. Diagnostic and Statistical Manual of Mental Disorders (Fourth Edition-Text Revision), p. 34. Dr. Raza added different medications to the plaintiff's regimen and suggested supportive psychotherapy. (Id.). Over the next several months, he continued to diagnose obsessive compulsive disorder, but changed the diagnosis of bulimia to anorexia nervosa, and continued to assign the same GAF score (despite noting improvement). (E.g., Tr. 250, 288, 294, 297). The only indication of possible functional restrictions, other than the GAF score, was in a form apparently

completed by a counselor at CCC, which indicated that the plaintiff was "moderately low" in "societal/role functioning" and "interpersonal functioning," had "slightly high" cognitive/intellectual functioning, and had "moderately high" daily living/personal care functioning and physical functioning. (Tr. 305). None of these statements from treating sources clearly indicate greater restrictions than found by the ALJ.

The plaintiff only makes one argument to this Court; that the ALJ did not give a sufficiently detailed rationale for finding the plaintiff's testimony to be not credible, as provided in Social Security Ruling 96-7p.

A review of the hearing decision shows that the ALJ considered the plaintiff's testimony in detail and contrasted some of her allegations which appeared to be contradictory, such as stating that her depression resulted in her having no energy and not wanting to do anything, but, on the other hand, her obsessive compulsive disorder resulted in repeated handwashing, checking things repeatedly, shopping as fast as she could, and cleaning with Lysol and Clorox. (Tr. 16-17). Her daily activities included getting her daughter up and ready for school, shopping for groceries, preparing meals, and working crossword puzzles. (Tr. 17). The ALJ also noted that Dr. Raza, while diagnosing certain conditions, consistently described her as having good grooming and hygiene, a euthymic mood and a congruent affect. (Tr. 19, 289-90, 292-3, 299). While the ALJ may not have explicitly stated that he found the plaintiff's testimony to be not credible because of inherent contradictions,

Miniard

her daily activities, and the observations of her treating psychiatrist, his thought processes are clear enough in this regard, and any failure to follow the precise letter of SSR 96-9p is, at the most, harmless error. See, e.g., Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592-3 (6th Cir. 1987); Wilson v. Commissioner of Social Security, 378 F.3d 541, 547 (6th Cir. 2004).

The decision will be affirmed.

This the 20 day of May, 2006.

*[signature]*
G. WIX UNTHANK
SENIOR JUDGE